THERIOT, J.
| ¿The defendant, Kenneth Truman Roberts, Jr., was charged by bill of information with one count of simple kidnapping of a person sixty-five years of age or older, violations of La. R.S. 14:45 and La. R.S. 14:50.2, and pled not guilty. Following a jury trial, he was found guilty as charged. He was sentenced to five years at hard labor and to an additional three years at hard labor because the victim was sixty-five years of age or older. He now appeals, challenging the trial court’s denial of his motion for continuance and the court’s questioning of a juror outside of his presence. For the following reasons, we affirm the conviction, amend the sentence, affirm the sentence as amended, and remand with instructions.

FACTS

On August 5, 2011, the victim, Delores Roberts, signed a written statement at her home indicating her son, the defendant, had broken into her bedroom and threatened to “beat [the victim’s] brains in” with her Virgin Mary statue if she did not get out of bed and take $80 out of the ATM. The statement indicated the defendant told the victim not to make a sound or he would “hurt [the victim].” The statement set forth the victim was terrified of the defendant and “afraid [the defendant] really will kill [the victim].” The statement also indicated the defendant had previously threatened to cut the victim “like a pig” and throw her in a ditch if she did not give him money.
At trial, the victim testified, at approximately 10:00 p.m. on the night of the incident, the defendant knocked on her door, woke her up, and told her he needed money. He was upset because “somebody was after him and was going to shoot him.” The victim stated the defendant did not have anything in his hand, did not threaten her, and did not physically harm her. She claimed he drove her to the bank because she did not see well enough to |sdrive at night, and she gave him $80, which he promised to repay. The victim indicated she signed the earlier statement about the incident and went to the Denham Springs Police Department because she was upset that the defendant had woken her up “in the middle of the night.” She denied that the defendant kidnapped her.
Denham Springs Police Department Officer Kevin Prejean also testified at trial. He indicated, on August 5, 2011, the victim “called in a complaint about a robbery,” and came to the police department at 7:24 a.m. Officer Prejean stated the victim was afraid of her son and had “snuck out of the house.” According to Officer Prejean, the victim alleged she had woken up to find the defendant holding a picture frame above her head. He threatened to “smash her skull if she didn’t bring him to the ATM to get eighty dollars.” Officer Preje-an testified the victim had also alleged the defendant threatened to hit her with a statuette of the Virgin Mary. Officer Pre-jean indicated the victim stated she rode with the defendant to the ATM and gave him $80 because “she was scared of him.”
Denham Springs Police Officers subsequently went to the victim’s residence to contact the defendant. He did not respond to knocks on the door or on the windows. Thereafter, the police entered the residence using the victim’s key. They found the defendant hiding in a bedroom closet. They arrested him for aggravated kidnapping and simple robbery and advised him of his Miranda[1] rights.

*757
DENIAL OF CONTINUANCE

In assignment of error number 1, the defendant argues the trial court abused its discretion in refusing to continue the trial after the State notified him it intended to offer fifteen hours of his phone calls.
14At a pretrial conference on April 9, 2012, defense counsel “put on the record” that the State had informed her that morning that the State was in possession of phone records from the jail to the victim, as well as a CD of the records. The defense moved for a continuance, alleging there was also a possible witness “that was there,” and that could testify on behalf of the defendant, and who had not been subpoenaed by prior defense counsel. The State indicated it was not in possession of any transcripts but would let the defense listen to the calls. The court ruled, “Well, you all can listen to them together today, then. And we are going to start the trial at 9:00 o’clock in the morning.”
On April 10, 2012, the day of trial, the defense filed a written motion for a continuance, alleging:
The State produced phone logs accompanied with the recorded conversations between defendant and the victim on late Monday, April 9, 2012. The phone conversations range from December 2011 — April 2012. Defense has not been properly afforded an opportunity to fully examine the documents and recordings. It is believed that the recorded conversations may include exculpatory statements and/or evidence. Further no transcripts of the recordings were provided.
The trial court denied the motion.
Additionally, at the hearing on post-trial motions, the State set forth:
As far as the State only received these tapes late Thursday, the Thursday afternoon before trial. In order to obtain these tapes we have to have a valid phone number to be able to compare it for the jail’s records. I did not receive that until 2:30 or 8 o’clock that Thursday. Quickly was able to call the jail and get them to pull those records. That was Easter weekend. As the court well know[s], court was closed all that weekend. Monday[,] I made the defense aware of that. Court ordered me to provide a copy to the Defense counsel. In fact, that afternoon, the Monday afternoon after we finished with court[,] I played the specific conversations that would be played at trial to Defense counsel, going over which ones.
Furthermore, Judge, these are the Defendant’s own statements. So he was aware that he had been making these Isphone califs] to the victim. It’s his own voice. He knew he was being recorded. And the conversation — the jail let’s [sic] them know these phone conversations are being recorded.
Furthermore, Judge, prior Defense counsel was made aware that the State was looking and investigating into the possibility that this defendant was intimidating the victim in this case, and that we were going to be trying to attempt to pull these jail records. The problem was that we didn’t have the correct phone numbers. The ones that we pulled, there were no recordings. Until we got the home phone number of the victim, which is where all these recordings came from.
The granting or denial of a motion for continuance rests within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion. State v. Albert, 96-1991 (La.App. 1st Cir. 6/20/97), 697 So.2d 1355, 1360.
There was no clear abuse of discretion in the denial of the motion for continu- *758 anee. The trial court instructed the State to provide the defense with the opportunity to listen to the recordings, and the State “played the specific conversations that would be played at trial to Defense counsel[.]” At trial, the defense used the recordings to cross-examine the victim.
This assignment of error is without merit.

IMPROPER QUESTIONING OF JUROR

In assignment of error number 2, the defendant argues the trial court abused its discretion by questioning a juror without defense counsel present and by failing to replace the juror due to partiality.
The State or the defendant may challenge a juror for cause on the ground that the juror is not impartial, whatever the cause of his partiality. La.Code Crim. P. art. 797(2). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the prospective juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law reasonably may |fibe inferred. However, the trial court is vested with broad discretion in ruling on a challenge for cause; its ruling will not be disturbed on appeal absent a showing of an abuse of discretion. State v. Henderson, 99-1945 (La.App. 1st Cir. 6/23/00), 762 So.2d 747, 754, writ denied, 00-2223 (La.6/15/01), 793 So.2d 1235.
A trial judge’s refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, when subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Taylor, 03-1834 (La.5/25/04), 875 So.2d 58, 63.
During a recess at trial, the bailiff brought juror Ronnie Shirley and the court reporter to the Judge’s chambers. The court stated the bailiff had brought it to the court’s attention that Juror Shirley had advised the bailiff that he knew one of the officers who would be a witness. Juror Shirley indicated he had worked with Detective Prejean at the East Baton Rouge Parish Sheriffs Office. The following colloquy occurred:
[Court]: And the fact that you know him[;] would that cause you to give his testimony any more weight because you know him?
[Shirley]: Well, I would believe him, but I would have to hear and weigh all of the evidence of all the case before I would make any decision about the case, you know.
[Court]: Okay. But what I need to know is because of the fact that you know this officer, would that keep you in any way from being fair and impartial to both parties in this case?
[Shirley]: No, Ma’am. I can be fair, and I’d listen to everything.
[Court]: So, then, what you’re telling me is that during this trial you would listen to all the facts and all the evidence and then make a decision from what those facts are and that you |7could give this defendant a fair trial even though you know this officer?
[Shirley]: Yes, Ma’am. I would.
[Court]: So, you would not give more weight to his testimony because of the fact that you know the officer?
[Shirley]: No. I would not.
[Court]: And you can be fair and impartial to both the State and the defendant?
[Shirley]: I will be fair. Yes, Ma’am.
*759 [Court]: Okay. Now, we have an alternate that can step up and you would not have to stay if you—
[Shirley]: No, Ma’am. I would like to stay, and, yes I will give him a fair trial.
[Court]: Okay. And you are sure?
[Shirley]: Yes, Ma’am.
[Court]: All right. Thank you, Sir.
[Shirley]: Thank you, Ma’am.
Following the recess, in an unrecorded bench conference, the court advised the State and the defendant that it had questioned Juror Shirley. In post-trial pleadings, the defense set forth, “[d]efense counsel immediately urged the right of [the defendant] to be present at any voir dire of a juror.”
The defendant’s right to be present during the questioning of Juror Shirley was violated. See La.Code Crim. P. art. 831(A)(8); State v. Copeland, 419 So.2d 899, 905 (La.1982); State v. Clay, 441 So.2d 1227, 1230-31 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La.1984). However, the provisions of Article 831 are not absolute. An accused may waive his presence by voluntary absence, La.Code Crim. Proc. art. 832, or by not objecting to his absence from an Article 831(A)(3) hearing, as required under the general contemporaneous objection rule to preserve the | smatter. State v. Broaden, 99-2124 (La.2/21/01), 780 So.2d 349, 360, cert. denied, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001); La.Code of Crim. Pro. art. 841(A).
The transcript of the proceeding reflects the trial court’s request that counsel approach the bench after she questioned Juror Shirley in chambers. Neither party disputes that the trial court advised counsel at that time of the communication with Juror Shirley. Although the defendant’s trial counsel asserted that he lodged an objection to the improper juror communication during the bench conference, the State does not concede that fact; and the record does not reflect an objection by defense counsel on the record after the completion of the unrecorded bench conference. Because the record does not confirm that defense counsel made a contemporaneous objection as required by Article 841 A, the defendant is precluded from raising this issue on appeal. See, Broaden, 780 So.2d at 360; State v. Howard, 31,807 (La.App. 2 Cir. 8/18/99), 746 So.2d 49, 56, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190; State v. Brown, 07-388 (La.App. 3 Cir. 10/3/07), 966 So.2d 1138, 1157 writ denied, 07-2159 (La.3/28/08), 978 So.2d 304 and writ denied, 08-0326 (La.3/28/08), 978 So.2d 312.
This assignment of error is without merit.

REVIEW FOR ERROR

Initially, we note that our review for error is pursuant to La.Code Crim. P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and “error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” La.Code Crim. P. art. 920(2).
Louisiana Revised Statutes 14:50.2, in pertinent part, provides;
The court in its discretion may sentence, in addition to any other penalty provided by law, any person who is convicted of a crime of violence ... as defined in R.S. 14:2(B) ... to an 19additional three years’ imprisonment when the victim of such crime is sixty-five years of age or older at the time the crime is committed.
Simple kidnapping is a crime of violence. La. R.S. 14:2(B)(17).
*760 Pursuant to La. R.S. 14:50.2, the trial court imposed an additional three years at hard labor to the defendant’s sentence because the victim was sixty-five years of age or older. The statute, however, does not provide for the additional penalty to be served at hard labor. The statute’s failure to provide for hard labor may be the result of legislative oversight. Nevertheless, it is a well-established tenet of statutory construction that criminal statutes are subject to strict construction. Any ambiguity in the substantive provisions of a criminal statute is resolved in favor of the accused and against the State. Accordingly, imprisonment at hard labor cannot be imposed under this statute. State v. Williams, 01-1398 (La.App. 1st Cir. 3/28/02), 815 So.2d 378, 382-83, wit denied, 02-1466 (La.5/9/03), 843 So.2d 388; See and compare La. R.S. 14:64.3 (prior to amendment by 2006 La. Acts No. 208, § 1). Accordingly, we amend the sentence by deleting that provision of the sentence which requires the additional penalty of imprisonment for three years, under La. R.S. 14:50.2, to be served at hard labor. We remand this case to the trial court for correction of the minutes and the commitment order.
We also note the trial court did not wait twenty-four hours after denying the motions for a new trial and for a post-verdict judgment of acquittal before imposing sentence. La.Code Crim. P. art. 873; See also State v. Wilson, 526 So.2d 348, 350 (La.App. 4th Cir.1988), writ denied, 541 So.2d 851 (La.1989) (“[La.Code Crim.] Art. 873 refers to both motions for a new trial and in arrest of judgment when it requires the twenty-four hour delay. Thus, the trial court’s failure to delay after denying |in... a motion for post-verdict judgment of acquittal should be analogously treated.”). However, the issue was neither assigned as error, nor was the sentence challenged, nor does the defendant cite any prejudice resulting from the court’s failure to delay sentencing. Thus, any error which occurred is not reversible. See State v. White, 404 So.2d 1202, 1204 (La.1981) and State v. Perez, 95-2445 (La.App. 1 Cir. 12/20/96), 686 So.2d 114, 118, writ denied, 97-0280 (La.6/20/97), 695 So.2d 1351.
CONVICTION AFFIRMED; REMAND SENTENCE WITH INSTRUCTIONS, AND AFFIRM AS AMENDED.
CRAIN J., concurs with reasons.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).